HOUSTON DAVIS v. THE STATE.

No. 13178.   Delivered March 19, 1930.
Rehearing Denied April 30, 1930.
Second Motion for Rehearing Denied June 25, 1930.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is selling intoxicating liquor; the punishment, confinement in the penitentiary for two years.

Two witnesses for the state testified that appellant sold whisky to the party named in the indictment. Appellant did not testify in his own behalf. His wife and other witnesses admitted the presence of the purchaser in appellant's home, but denied that appellant sold him any whisky.

Bill of exception No. 1 is concerned with the refusal of the trial court to change the venue. It was averred in the application that there existed in Brown county so great a prejudice against appellant that he could not obtain a fair and impartial trial. It appeared that there had

been numerous raids made by the sheriff's department in which a large quantity of intoxicating liquor had been seized. Many indictments had been returned by the grand jury. The sheriff had been commended for his effort to enforce the liquor laws in a statement signed by citizens of Brownwood and published in the Brownwood papers. The papers had given a great deal of publicity to the effort on the part of the sheriff to enforce the liquor laws, and had called upon the good citizenship to co-operate with him. Accounts of the raids were carried in the papers, as was the charge of the district judge to the grand jury, wherein he commended the officers for their effort to enforce the liquor law. Also, there was carried in the papers the statement that some of the officers had been threatened and attacked by bootleggers. A controversy between the sheriff's department and the police departmet of Brownwood, wherein the sheriff charged that he received no co-operation from the police department, and wherein the chief of police denied such charge, was given publicity in the papers. Several witnesses testified that bootlegging had become bad in the county, and that the indignation of the good citizenship had been aroused. These witnesses testified that in their opinion appellant could not receive a fair and impartial trial in Brown county. Witnesses for the state testified that in their opinion appellant could receive a fair and impartial trial. They said that the good citizenship of the county wanted the liquor laws enforced, but that there was no excitement or indignation prevalent throughout the county. It appears that the population of Brown county is approximately 26,000, 16,000 of such number residing in the city of Brownwood. Very few of the witnesses testifying on the hearing were acquainted with appellant. It seems to have been the theory of appellant that no person charged with a violation of the liquor laws could receive a fair and impartial trial in Brown county, and that by virtue of the co-operation on the part of the citizenship with the sheriff's department in enforcing the liquor laws, great prejudice had arisen against appellant's case. It appears that some of the good citizens had voluntarily donated sums of money to the sheriff in order that he might employ extra help to be used in detecting violations of the liquor laws. As we understand the matter, these donations were made by a small number of men residing in the city of Brownwood.

The testimony pro and con presented conflicting theories. It is the rule that if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. A judgment denying the application will not be disturbed on appeal unless it be made to appear that the trial court abused its discretion. McNeely v. State, 104 Texas Crim. Rep., 263, 283 S. W., 522; Shelburne v. State, 111 Texas Crim. Rep., 182, 11 S. W. (2d) 519. We are unable to reach the conclusion that the record reflects an abuse of the discretion vested in the trial court.

The remainder of appellant's bills of exception were filed too late. The court adjourned on the third day of August, 1929. The bills of exception were filed on the thirtieth of September, 1929. No extension of time for the filing of the bills was granted by the trial court. Article 760, subd. 5, C. C. P. allows thirty days after the day of adjournment of court for filing bills of exception, provided the trial term is less than eight weeks. There being no order in the record extending the time, and said bills not having been filed within thirty days after the adjournment of court, we are compelled to hold that they were filed too late. Mann v. State, 102 Texas Crim. Rep., 210, 277 S. W., 1085.

We find in the record some exceptions to the court's charge. It is recited that said exceptions were duly presented to the trial court before the main charge was read to the jury, but such statement is not authenticated by the trial court. Hence, the exceptions are not entitled to consideration.

No error appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Since this case was affirmed appellant has filed in the trial court a motion asking that the trial judge who tried this case, enter a nunc pro tunc order granting appellant eighty days from the adjournment of the trial term of the court below within which to file statement of facts and bills of exception,—all of which is shown in connection with appellant's motion for rehearing. Responding to appellant's said motion the trial court, on March 30, 1930, made such nunc pro tunc order. This he was entirely without authority to do. Article 828, C. C. P., is plain and has been often followed and construed by this court. It is lucidly discussed by Judge Davidson in Quarles v. State, 37 Texas Crim. Rep., 362, 39 S. W., 668. Same has been uniformly adhered to by us in other cases, the most recent appearing to be Acuff v. State, 98 Texas Crim. Rep., 71, 262 S. W., 761. The case of Lewis v. State, 34 Texas Crim. Rep., 126, 29 S. W., 384, 774, and Quarles v. State, supra, have been many times referred to with approval. In Clay v. State, 56 Texas Crim. Rep., 515, 120 S. W., 418, an attempt was made to amend the record by sending up certified copies of memorandums upon the judge's docket relative to the notice of appeal. After stating what is now article 828, C. C. P., this succinct statement is made: "Nor can these orders be entered nunc pro tunc." In Mayhew v. State, 69 Texas Crim. Rep., 207, 155 S. W., 191, 203, passing upon the proposition of an attempted order made by the trial court while the

case was pending appeal in this court, it is stated: "It would seem unnecessary to cite authorities in support of the announced proposition that the court below lost all jurisdiction while the case was pending in this court, and that it could not assume any jurisdiction in the case for any purpose until after mandate of this court had been filed in the lower court. The statute and the cases make this rule absolute." In Walker v. State, 85 Texas Crim. Rep., 483, 214 S. W., 331, the following appears: "The second proposition is that pending the appeal the court from which the appeal was taken is powerless to enter this character of order; that its jurisdiction would be limited to supplying lost or destroyed records. We find this to be a correct proposition under the statute and decisions construing that statute," citing authorities.

It is claimed that under articles 2227-2229, Revised Civil Statutes, 1925, records may be corrected to speak the truth. We do not think it of any value to discuss this proposition for the obvious reason that at the same time these statutes were enacted pertaining to civil cases, article 828, C. C. P., was also re-enacted, having specific reference to the rule in criminal cases. We observe, however, some authorities in civil matters. In New York Life Ins. Co. v. Herbert, 48 Texas Civ. App., 95, 106 S. W., 421, it is stated that where the plaintiff's recovery was excessive, the filing of a remittitur in the trial court was unavailable after the Court of Civil Appeals had obtained jurisdiction on writ of error. In Texas Harvester Co. v. Wilson-Whaley Co. (Texas Civ. App.), 210 S. W., 574, appears the statement that after adjournment of term during which judgment was rendered, trial judge has no jurisdiction to correct error in allowing excessive interest. See, also, Knight v. Waggoner (Texas Civ. App.), 214 S. W., 690, and Wier v. Yates (Texas Civ. App.), 256 S. W., 636. These cases are merely cited arguendo.

Our attention is called to what we said in Williams v. State, 111 Texas Crim. Rep., 511, 14 S. W. (2d) 274, in that part of the opinion on application for leave to file second motion for rehearing. The matter therein acted upon was before us without any brief on behalf of the state. Without looking to article 828, supra, and the decisions thereunder, we stated that we would grant appellant's application to the extent of considering the bills filed within the time allowed by an order appearing in the minutes, shown by a nunc pro tunc order to have been corrected to correspond with the time allowed by the court in his docket entry. Giving effect to article 828, supra, we were wrong in considering said bills of exception. What was said by us in said opinion, in so far as it may be deemed authority for considering such bills of exception, will be overruled.

Regretting that the record in the instant case was not made up in accordance with what the learned trial judge now says in his nunc pro

tunc order, same should have been, and because we must adhere to the law as it is written, the motion for rehearing will be overruled.

*Overruled.*

## ON SECOND MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Upon the original hearing and on rehearing there appeared in the record before this court no order of the trial court extending the time within which there might be filed a statement of facts and bills of exception, nor was there any claim then made that the court below had signed any written order which was lost. It is now made to appear that at the time of overruling the motion for new trial on the 2nd day of August, 1929, the trial judge prepared and signed a written order overruling the motion, noting thereon the following:

"* * * to which action of the Court the defendant then and there in open court excepted and gave notice of appeal to the Court of Criminal Appeals of the State of Texas, at Austin, Texas, and asked for eighty days from and after the adjournment of this court in which to prepare and file his bills of exceptions and statement of facts, which request is hereby granted and this notice and order is ordered to be placed of record.

"(Signed) E. J. Miller,
"Judge Presiding."

It is also now shown that the order so written was delivered to the district clerk for entry on the minutes. The clerk, however, failed to enter the order upon the minutes. Discovering the omission, the appellant sought an entry of the order, nunc pro tunc, and presented in the trial court a motion, notice of which was given to the district attorney, and upon the hearing thereof the minutes were corrected to show the true facts, namely, that at the time the motion for new trial was overruled the appellant was granted eighty days after the adjournment of court within which to prepare and file the statement of facts and bills of exception. It further appears that the original written order prepared by the court has been lost, but that the substance of it was written upon the judge's docket. The latter are simply matters of evidence.

The conclusion stated by this court that the nunc pro tunc order cannot be considered for the reason that the trial court had no authority to enter it after the appeal to this court is supported by the precedents which are cited in the opinion on motion for rehearing.

Commenting on article 884, C. C. P., now article 828 (1925), this court, in the case of Quarles v. State, 37 Texas Crim. Rep., 362, 39 S. W., 668, 669, said: "It would seem from a proper construction of this statute that, pending appeal to this court, the trial court from which said appeal is taken can take no steps with reference to the case until this court has finally disposed of said appeal, except where some portion of that record has been lost or destroyed, after notice of appeal has been given."

In Turner v. State, 16 Texas App., 318, the attention of the Legislature was called to the fact that under the statute as it then read the trial court could not even substitute lost or destroyed portions of the record after notice of appeal had been given, and it was suggested that the law be so changed as that the records might be amended to conform to the facts as well as to substitute lost papers. The Legislature responded to the suggestion only to the extent of permitting the substitution of lost or destroyed records. See Quarles v. State, 37 Texas Crim. Rep., 362, 39 S. W., 668. That condition remains unnchanged. See article 828, C. C. P. (1925).

Of the injustice that may result the present record furnishes an illustration, and occasion is taken for again calling it to the attention of the Legislature. It is now made apparent that without fault on the part of the accused or his counsel the bills of exception were filed after the expiration of the time allowed by statute and that by force of article 828, supra, as heretofore construed, he will be deprived of a hearing on appeal unless he be afforded relief under the rule announcd by this court in the case of George v. State, 25 Texas App., 229, 8 S. W., 25, namely, that when not filed within the time allowed by the law the bills may be considered where it is shown to the satisfaction of this court that due diligence was used to secure their filing within the proper time and that the failure was without fault on the part of the accused or his attorney. From the showing made in connection with his second motion for rehearing we think appellant has brought the case within the rule in George v. State, and that under the rule his bills should be considered, but that he has no right under the order nunc pro tunc as the court had no power to make that order.

Upon the acceptance of nine jurors the panel was exhausted, and talesmen were required. With the consent of the appellant and his counsel, the selected jurors were permitted to separate without the presence of an officer. They were instructed by the court, however, to refrain from discussing the case or permitting its discussion in their presence. The controlling statute is article 668, C. C. P., which reads as follows: "After the jury had been sworn and impaneled to try any felony case, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the state and the defendant, and in charge of an officer."

This statute has been construed as having no application in a felony case less than capital where the jury has not been impaneled and sworn to try the case. See Rhea v. State, 101 Texas Crim. Rep., 298, 275 S. W., 1021; Coffey v. State, 82 Texas Crim. Rep., 57, 198 S. W., 326; Jones v. State, 69 Texas Crim. Rep., 447, 153 S. W., 897. This refers to Bill No. 2.

The inquiry of the state's witness J. B. Casey touching the number

of times he had been married is not shown by the bill to have been relevant or material. The appellant seems to have desired to make the inquiry as bearing upon the character of Casey. The bill is silent touching the expected answer or the nature of Casey's testimony. The reference is to Bill No. 3.

The same principle applies to Bill No. 4 in which the appellant's inquiry as to whether Casey was a "stool pigeon" was interrupted by the court. The relevancy or materiality of Casey's testimony is not made manifest by the bill. Of the same nature is Bill No. 5 touching the cross-examination of Casey with reference to whether he had at some time in Eastland county, conducted a gambling house.

In Bill No. 6 it appears that the witness Casey, testifying for the state, said that he went to the home of S. B. Davis and there waited until the appellant came and delivered a pint of whisky for which he was paid by the witness. In response to a question by state's counsel he made the additional statement: "I stayed there long enough to drink a bottle of beer." The answer was withdrawn by the court. In the same connection Casey testified that there was a farmer drinking a bottle of beer. This seems to have taken place at the home of the appellant's brother and at the time and place that the appellant delivered Casey the pint of whisky. The propriety of the consideration of the bill last mentioned is questionable for the reason that it is in substance in question and answer form. However, error is not deemed to have been shown; certainly none that would authorize the reversal of the case.

Bill No. 8 seems to relate to the same transaction as that of which complaint is made in Bill No. 7. The court seems to have made an effort to qualify it by explaining a number of these bills but his name is not signed to the qualifying statement and it is not considered as a part of the bill.

Bill No. 9 reflects an effort to elicit testimony from a witness who had testified to the good reputation of J. B. Casey; that Casey had at one time run a gambling house in Eastland county, and was known in that neighborhood as a gambler. The inquiry would probably have been a proper one if it did not relate to a time too remote. The date does not appear in the bill but no reversal can be based upon it for the reason that the bill fails to show what testimony was given by Casey, either in substance or in detail.

In Bill No. 10 the charge of the court is criticized because it embraced the following statement: "You will not consider for any purpose the evidence introduced as to the reputation of the defendant for truth and veracity."

It is stated in the bill that it was confusing and unnecessarily limited and qualified the rights of the accused, especially in view of the fact that some of the witnesses who gave testimony to his good reputation for

truth and veracity testified to his good reputation as a law-abiding citizen. The court attempted to qualify the bill by stating that the testimony was admitted upon the assurance of the appellant's attorney that the appellant would testify in his own behalf, but that in fact he did not do so. The unsigned qualification cannot be considered. The bill not showing that the appellant testified, would intimate that he did not, and the statement of facts shows that he was not a witness.

Upon the record before us, we are constrained to overrule the second motion for rehearing.

*Overruled.*